## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GERALD BROWN**                                **CIVIL ACTION**

**VERSUS**                                      **NO. 14-1470**

**HOME DEPOT U.S.A., INC.**                     **SECTION: "G"(3)**

### ORDER

Before the Court is Defendant Home Depot U.S.A., Inc.'s ("Home Depot") "Motion for Summary Judgment."[1] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the motion.

### I. Background

*A.    Factual Background*

Plaintiff Gerald Brown, an African American, alleges that he was terminated from his position as Assistant Store Manager ("ASM") of Home Depot's store in Marrero, Louisiana because of his race. Brown worked as an ASM from April 2010 until he was terminated on July 4, 2013.[2] From December 2011 until his termination, Brown's supervisor was Chad Abadie, a Caucasian.[3]

On March 20, 2012, Brown received his yearly evaluation for Fiscal Year 2011, which was drafted and delivered by Abadie.[4] The evaluation noted some of Brown's strengths and performance deficiencies. Brown had an opportunity to submit any disagreements with his review in writing, but

---

[1] Rec. Doc. 30.

[2] Rec. Doc. 30-2 at ¶¶ 2–3.

[3] *Id.* at ¶¶ 4–5.

[4] *Id.* at ¶ 13; Rec. Doc. 33-2 at ¶ 12.

1

did not do so.[5]  He was scored as a "Valued Associate" and "Well Positioned" in the review.[6]

Brown received disciplinary notices during his employment at Home Depot.[7] On April 12, 2012, Abadie issued Brown a disciplinary notice for failing to execute "shrink plans" in the Lumber and Building Materials Departments, which Brown supervised.[8] On May 14, 2012, Brown received another disciplinary notice, again for failing to execute Home Depot's "shrink plans."[9] On July 3, 2012, Brown received a "final warning" for failing to report an incident experienced by an hourly associate.[10] On July 11, 2012, Brown and other ASMs received a group disciplinary notice for failing to follow Home Depot's "zero markdown" policy.[11] At the time of this group write-up, the Marrero store had three African American ASMs and one Caucasian ASM.[12]

After the July 11, 2012 incident, Home Depot's Associate Advice and Counsel Group ("AACG") recommended that Brown be terminated, since he had already received a final warning.[13] Sondra Hogan-Jones, the District Human Resources Manager who is African American, initially

_____

[5] *Id.* at ¶ 14.

[6] *Id.* at ¶ 15.

[7] Rec. Doc. 33-2 at ¶ 7. Based on Brown's briefing, the Court cannot determine whether Brown admits or controverts that he received these disciplinary notices. Brown appears to admit that he received 12 disciplinary notices during his employment at Home Depot, including seven within the last 19 months of his employment.

[8] Rec. Doc. 30-2 at ¶ 18; Rec. Doc. 33-2 at ¶ 17.

[9] *Id.* at ¶ 21; Rec. Doc. 33-2 at ¶ 18.

[10] *Id.* at ¶¶ 24-25. Brown appears to contest the circumstances within which this notice was given, but not the fact that the notice was, in fact, issued. *See* Rec. Doc. 33-2 at ¶ 21.

[11] *Id.* at ¶ 28.

[12] *Id.* at ¶ 29.

[13] *Id.* at ¶ 33. Brown appears to contest whether the final warning was valid, but not the fact that the AACG recommended that he be terminated. *See* Rec. Doc. 33-2 at ¶¶ 27-28.

agreed with the AACG's recommendation to terminate Brown.[14] Hogan-Jones consulted with Demetrice Brown, the Regional Associate Relations Manager who is African American, and the decision was made not to terminate Brown because the incident was related to an ASM-wide issue at the Marrero store.[15] In his evaluation for fiscal year 2012, Brown received a "V2" rating as a valued associate.[16] Abadie believed that Brown's performance evaluation was deserving of an "I" rating, meaning that improvement was needed.[17]

On January 19, 2013, Abadie issued Brown a written counseling, which noted that Brown failed to show up for his shift on January 7, 2013.[18] On February 1, 2013, Abadie issued Brown another final warning, which stated that his performance during a "district business walk" conducted by the district management team fell below the standards expected for job performance.[19] After issuing this warning, Abadie kept "manager's notes" of Brown's performance.[20]

At some point following the February 1, 2013 incident, Hogan-Jones requested approval from Demetrice Brown to terminate Brown.[21] In her request, she outlined Brown's performance

---

[14] *Id.* at ¶ 34.

[15] *Id.* at ¶ 35.

[16] *Id.* at ¶ 59.

[17] *Id.* at ¶ 58.

[18] *Id.* at ¶¶ 41-42. Brown appears to argue that the January 17, 2013 written counseling was "invalid," but he does not contest that the notice was issued or the circumstances surrounding the issuance.

[19] *Id.* at ¶ 47. Brown states that "[s]ince the January 19, 2013 Counseling Notice that Abadie issued Brown was invalid, the February 1, 2013 Final Warning that Abadie issued to Brown is also invalid . . ." Rec. Doc. 33-2 at ¶ 35. However, Brown does not contest that the February 1, 2013 final warning was issued or the circumstances surrounding its issuance.

[20] *Id.* at ¶ 51.

[21] *Id.* at ¶ 67.

failures and attached his Fiscal Year 2012 evaluation and his performance counselings.[22] In response, Demetrice Brown noted that there were only two "active" counseling notices on file and requested additional information from Hogan-Jones about her decision to recommend that Brown be terminated.[23] Hogan-Jones presented the content of "manager's notes" which Abadie had been keeping with respect to Brown's job performance.[24] Demetrice Brown approved the termination, and Brown was terminated on July 4, 2013.[25]

At the time of Brown's termination, he was one of four ASMs in the Marrero store.[26] As of January 1, 2013, three of those ASMs, including Brown, were African American and one, Joseph Fouchi, was Caucasian.[27] Today, there are three ASMs in the Marrero store: one African American and two Caucasians.[28] Neil Penner, a Caucasian, is a Department Head at the Marrero store.[29]

**B.    *Procedural Background***

Brown filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on December 4, 2013 and was issued a right to sue letter on June 16, 2014.[30] On June 24, 2014, Brown filed the complaint in this lawsuit against Home Depot, wherein he alleges race

---

[22] *Id.* at ¶ 68.

[23] *Id.* at ¶ 69.

[24] *Id.* at ¶ 70.

[25] *Id.* at ¶ 71.

[26] *Id.* at ¶ 75.

[27] *Id.* at ¶ 76.

[28] *Id.* at ¶ 77.

[29] *Id.* at ¶ 81.

[30] Rec. Docs. 17-1, 17-2.

discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Louisiana Employment Discrimination statute, LA. R.S. § 23:301 *et seq.*[31]

Home Depot filed the pending motion for summary judgment on March 3, 2015, contending that Brown's claims are unsupported by evidence and fail as a matter of law.[32] Brown filed a memorandum in response on March 10, 2015,[33] and Home Depot filed a memorandum in reply on March 19, 2015.[34] Brown submitted a supplemental memorandum in further opposition to summary judgment on March 23, 2015.[35]

## II. Parties' Arguments

### A.    *Home Depot's Arguments in Support of Summary Judgment*

According to Home Depot, the burden-shifting paradigm set forth in *McDonnell Douglas Corp. v. Green* applies in employment discrimination cases where, as here, there is no direct evidence of discrimination.[36] Home Depot contends that Brown must first establish a *prima facie* case of race discrimination by demonstrating that (1) he is a member of a protected class, (2) he was qualified for the employment position at issue, (3) he suffered an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, or that he was replaced

---

[31] Rec. Doc. 1 at ¶ 12.

[32] Rec. Doc. 30.

[33] Rec. Doc. 33.

[34] Rec. Doc. 37.

[35] Rec. Doc. 40.

[36] Rec. Doc. 30-1 at p. 18.

by someone outside of his protected class.[37] Home Depot does not dispute that Brown satisfies the first three elements of this test; instead, Home Depot argues that Brown cannot demonstrate that he was replaced at all, let alone by someone outside of his protected class.[38] Home Depot proffers the deposition testimony of both Abadie and Neil Penner, who attest that Penner was not offered Brown's former position.[39] Although Penner and other "key-carrying hourly associates" filled in and helped where they were needed shortly after Plaintiff's termination," Home Depot avers that this does not establish that Brown was replaced for the purpose of establishing his *prima facie* case.[40]

Home Depot also argues that Brown cannot show that a similarly situated employee outside of his protected class was treated more favorably under nearly identical circumstances.[41] According to Home Depot, Brown argues that Fouchi, a Caucasian ASM, was involved in a $10,000 markdown adjustment approval on shingles but was not disciplined. However, Home Depot avers, neither Abadie nor Hogan-Jones were aware of the adjustment and, moreover, Brown cannot show that Fouchi had an identical, much less similar, performance or disciplinary history as Brown.[42] Accordingly, Home Depot contends, Brown cannot establish the fourth requirement of his *prima facie* case.

Even if Brown could establish a *prima facie* case of employment discrimination, Home Depot argues that it had a legitimate, non-discriminatory reason for his discharge: his continued and

---

[37] *Id.*

[38] *Id.*

[39] *Id.* at p. 19.

[40] *Id.* (citing *Hardy v. Shell Chemical Co.*, 693 F. Supp. 2d 611, fn. 25 (E.D. La. 2010)).

[41] *Id.*

[42] *Id.* at p. 20 (citing *Berquist v. Washington Mutual Bank*, 500 F.3d 344, 353 (5th Cir. 2007)).

consistent poor performance.[43] According to Home Depot, Brown was issued a "written counseling"

on four occasions between July 23, 2009 and July 12, 2011 for his failure to follow various store

policies,[44] and on December 22, 2011 for his failure to monitor and process store markdowns as

required by Home Depot's Standard Operating Procedures ("SOPs").[45] Home Depot argues that

Brown was issued six additional written counselings between April 12, 2012 and February 1, 2013

for failure to follow various SOPs.[46]

Finally, Home Depot argues that Brown has no evidence that Home Depot's stated reason

for the termination is actually a pretext for discrimination.[47] Home Depot contends that Brown

attempts to show pretext by questioning the wisdom of the termination decision, but the fact that

Brown believed that he was an "exemplary" employee is not sufficient to satisfy Brown's burden

of demonstrating pretext.[48]

## B.   *Brown's Arguments in Opposition to Summary Judgment*

In response, Brown argues that "after his termination his job duties were assigned to

Caucasian employees and that Home Depot retained a Caucasian in the same position that Brown

held."[49] Specifically, Brown argues that he was replaced by Neil Penner, a Caucasian. To support

this argument, Brown proffers the affidavits of Syntheria Prewitt, a Sales Associate in the Millwork

---

[43] *Id.* at p. 20.

[44] *Id.* at pp. 2–3.

[45] *Id.* at p. 4.

[46] *Id.* at pp. 6–10.

[47] *Id.* at p. 21.

[48] *Id.* at p. 22.

[49] Rec. Doc. 33 at p. 11.

Department, and Danise Franklin, a Home Depot customer. According to Brown, Prewitt states that "Abadie told the sales associates that Penner was appointed as an Interim ASM to replace Brown."[50] Brown also contends that Franklin called the Marrero store after Brown's termination and was directed to Penner when she asked to speak with Brown's replacement.[51]

Brown also appears to allege that as of August 16, 2013, Fouchi assumed responsibility for Brown's former departments.[52] According to Brown, "Home Depot retained Fouchi, Caucasian, as an ASM at its Marrero store and assigned him a number of Brown's former duties."[53] As evidence of this, Brown argues that Fouchi signed Penner's midyear evaluation, a task which, apparently, Brown used to complete.[54]

With respect to evidence of pretext, Brown contends that he received favorable reviews and bonuses, and that this creates a genuine issue of material fact as to pretext.[55] He argues that Home Depot terminated him based on "a suspicious July 4, 2012 Final Warning and on a bogus January 19, 2013 Counseling Notice.[56] According to Brown, the Final Warning was for allegedly failing to report an accident that occurred on July 1, 2012; Brown denies having any knowledge of the accident.[57] Brown contends that the Counseling Notice was issued "for absences that did not

---

[50] *Id.* at p. 13.

[51] *Id.*

[52] *Id.* at p. 14.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.* at p. 17.

[57] *Id.*

happen." Specifically, he alleges that Abadie created a "bogus" counseling notice on January 19, 2013 for Brown's alleged absence from work on January 7, 2013 and tardiness on January 17, 2013,[58] but that Brown was not scheduled to work on either day and, moreover, was ill on January 7, 2013.[59]

Brown avers that Abadie and Hogan-Jones recommended Brown's termination based "almost exclusively on documents created by Abadie and on Abadie's truthfulness in creating those documents."[60] Specifically, Brown alleges that:

> In recommending Brown's termination, Hogan-Jones relied on three disciplinary notices created by Abadie, the development plan that Abadie allegedly created on Brown, and Abadie's eight manager's notes. Brown has provided evidence that casts serious doubts regarding the validity of two of those disciplinary notices, the July 4, 2012 Final Warning and the January 19, 2013 Counseling Notice. In regard to the third, which was the February 1, 2013 Final Warning, it would not have been a final warning but for the bogus January 19, 2013 Counseling Notice.[61]

Brown alleges that Abadie never gave the eight managers' notes to Brown or discussed the notes with him, and that the development plan was never provided to him.[62] Brown also states that Home Depot had a policy to communicate expectations for improvement and effectuate a development plan for employees not meeting expectations.[63] Brown alleges that Abadie failed to give him a written development plan, never communicated with him regarding any deficiencies that Abadie alleged in

---

[58] Rec. Doc. 33 at p. 5.

[59] Id. at pp. 5–6.

[60] Id.

[61] Id. at pp. 7–8.

[62] Id. at p. 8.

[63] Id.

his manager's notes, and never gave Brown a specific time frame for improvement.[64] Neither Home Depot nor Hogan-Jones have a copy of the development plan at issue, Brown contends.[65]

Finally, Brown argues that he has established  pretext through evidence  of disparate treatment - specifically, that "Abadie treated Fouchi much more favorably than Brown in regard to work schedules and discipline."[66] Brown argues that Home Depot treated Fouchi more favorably than Brown, apparently because Fouchi was not terminated after making a "major work rule violation."[67] Brown also alleges that Abadi scheduled Brown to work the "onerous" closing shift 33 times between March 4, 2013 and July 4, 2013, while scheduling Fouchi to work that shift only 17 times during that period.[68] Brown additionally points to the affidavit of Prewitt, an  African American, who states that Abadie refused to consider her for a promotion to a vacant supervisor position in the Millwork Department despite her "excellent work record," and offered the position to two less qualified Caucasian males.[69] Prewitt states that Abadie did not interview or consider her for the position.[70] Brown  finally submits the affidavit of an African American customer of the store, who states that Abadie has treated him differently than Caucasian customers.[71]

---

[64] *Id.* at p. 23.

[65] *Id.*

[66] *Id.* at p. 24.

[67] *Id.* at p. 22.

[68] *Id.*

[69] *Id.* at p. 25.

[70] *Id.*

[71] *Id.*

### C.    *Home Depot's Arguments in Further Support of Summary Judgment*

Home Depot contends that Brown's opposition memorandum is "riddled with mischaracterizations of testimony, inadmissible hearsay, and 'evidence' that is of limited, if any [sic] value at all."[72] For instance, Home Depot states that it "defies logic" that Brown would tell Abadie that he is too ill to work if, in fact, Brown was not scheduled to work that day at all.[73]

Home Depot reavers that Brown failed to establish a prima facie case of race discrimination because he cannot prove that he was either replaced by someone outside his protected class or that similarly situated employees outside of this protected class were treated more favorably under nearly identical circumstances.[74] According to Home Depot, the only evidence proffered by Brown with respect to this issue are affidavits of a store customer and a former employee, and the transcript of a tape-recorded conversation with Brown's former subordinate; Home Depot contends that all of this evidence is inadmissible hearsay.[75] Home Depot argues that Penner and Abadie both testified that Penner was never offered an ASM position or assumed Brown's job responsibilities.[76] According to Home Depot, Alvin Lewis, an African American, "assumed all of the merchandising departments in the store" after Brown's termination, including those that Brown had supervised.[77] Home Depot argues that Brown was not replaced because since his termination, there have been

---

[72] Rec. Doc. 37 at p. 7.

[73] *Id.*

[74] *Id.* at p. 10.

[75] *Id.*

[76] *Id.* (citing Rec. Doc. 30-5 at p. 48; Rec. Doc. 30-10 at p. 48).

[77] *Id.* at p. 11 (citing Rec. Doc. 33-7 at p. 30).

11

only three ASMs, save for a few days of overlap when ASMs were transferred between stores.[78]

Next, Home Depot argues that Brown proffers conclusory allegations of race discrimination which, without more, are insufficient to show pretext.[79] With respect to Brown's allegations disputing that validity of the disciplinary actions taken against him, Home Depot argues that "disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext."[80] With respect to Brown's allegation that he and Fouchi were treated differently under nearly identical circumstances, Home Depot argues that Brown has failed to proffer any evidence demonstrating that he and Fouchi were similarly situated, such as Fouchi's disciplinary record.[81]

**D.    Brown's Sur-Reply**

Brown argues that he has proffered competent summary judgment evidence demonstrating that he was replaced "with Caucasians and that Fouchi was never disciplined for his major work rule violation."[82] According to Brown, the transcript of Brown's July 26, 2013 telephone conversation with Penner is not inadmissible hearsay because "not only did [Penner] not deny making the statements attributed to him, Penner basically conceded their accuracy by attempting to explain his statements."[83] Brown also contends that:

> [t]he statements contained in the affidavits of Prewitt and Franklin were made by employees at Home Depot's Marrero store concerning matters that were in the

---

[78] Rec. Doc. 30-1 at p. 15.

[79] *Id.* at p. 12 (citing *Little v. Republic Refining Co.*, 924 F. 2d 93, 06 (5th Cir. 1991); *Ramsey v. Henderson*, 286 F. 3d 264, 269 (5th Cir. 2002)).

[80] *Id.* (citing *LeMarie v. La. Dep't of Transp. & Dev.*, 480 F. 3d 383, 391 (5th Cir. 2007)).

[81] *Id.* at pp. 12–13.

[82] Rec. Doc. 40 at p. 1.

[83] *Id.* at p. 2.

course and scope of their employment. Therefore, those statements are not hearsay. Furthermore, the statements in the signed, sworn affidavits of both Prewitt and Franklin are based on their personal knowledge of statements made to them, and pursuant to Rule 56(c), those statements are also not hearsay.[84]

Brown argues that Prewitt's affidavit is admissible for the additional reason that it is not offered for its truthfulness, but rather is offered to demonstrate that Abadie knew of Prewitt's qualifications.[85] Brown additionally contends that he has "produced affidavits from two witnesses on the issue of Abadie's motive and intent," apparently because Prewitt accuses Abadie of racial discrimination in her affidavit and Haynes, a Home Depot customer, alleges that Abadie treats African American customers "in an abrasive manner" and "attributes this difference in treatment to racial bias on the part of Abadie."[86]

Finally, with respect to whether he was replaced, Brown states that he has introduced the affidavits of Franklin and Prewitt, "both of which show that Penner replaced and/or assumed Brown's job duties after his termination."[87] As additional evidence that he was replaced, Brown points to Penner's own deposition, wherein he stated that "Chad wants me to be manager but wants me to be the department head, also. He wants me to – He wants me to do two things at once."[88]

## III. Applicable Law

A.      *Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56(a), when the pleadings and evidence demonstrate

---

[84] *Id.* at p. 4.

[85] *Id.* at p. 5 (citing *Gearhart v. Uniden Corp. of America*, 781 f.2d 147 (8th Cir. 1986)).

[86] *Id.* at p. 6.

[87] *Id.* at p. 7.

[88] *Id.* at p. 8 (citing Rec. Doc. 33-17 at p. 33).

that no genuine dispute exists as to any material fact, the moving party is entitled to judgment as a matter of law, and summary judgment should be granted.[89]   Only if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party is the dispute "genuine."[90] In determining if a dispute exists such that a jury could return a verdict in favor of the nonmoving party, the court is not to "make credibility determinations or weigh the evidence."[91]   Instead, the court must view the evidence in the light most favorable to the nonmoving party.[92]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden merely by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[93]   At that time, the nonmovant must come forward with competent summary-judgment proof of the existence of a genuine dispute regarding a material fact.[94]   However, mere conclusory allegations are not competent summary-judgment proof, and are therefore insufficient to defeat a motion for summary judgment.[95]   Likewise, unsubstantiated assertions, improbable inferences, and

---

[89] Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[90] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  *See also Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc) ("If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion[] is proper.").

[91] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.  *See also Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008) (stating that the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence").

[92] *Int'l Fidelity Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 679 (5th Cir. 2011).

[93] *See Celotex*, 477 U.S. at 325.

[94] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[95] *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

unsupported speculation are not competent summary-judgment proof.[96]  Instead, the party opposing

summary judgment must identify specific evidence in the record[97] and articulate the precise manner

in which that evidence supports his claim.[98]  Federal Rule of Civil Procedure 56 does not impose on

the court a duty to "sift through the record in search of evidence" to support the nonmovant's

opposition;[99] the burden to identify such evidence remains wholly on the nonmovant.[100]  Hearsay

evidence and unsworn documents that cannot be presented in a form that would be admissible in

evidence at trial do not qualify as competent opposing evidence.[101]

      "Only disputes over facts that might affect the outcome of the suit under the governing laws

will properly preclude the entry of summary judgment."[102]  The court need not consider disputed fact

issues which are "irrelevant and unnecessary."[103]   If the nonmovant fails to make a showing

sufficient to establish the existence of a factual dispute regarding an element essential to its case and

on which it will bear the burden of proof at trial, summary judgment must be granted.[104]

## B.  *Employment Discrimination*

      Title VII makes it "an unlawful employment practice for an employer . . . to discriminate

---

[96] *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

[97] Fed. R. Civ. P. 56(c); *Ragas*, 136 F.3d at 458.

[98] *Celotex*, 477 U.S. at 324; *Ragas*, 136 F.3d at 458; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[99] *Ragas*, 136 F.3d at 458.  *See also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n. 7 (5th Cir. 1992).

[100] *Id.*

[101] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2).

[102] *Anderson*, 477 U.S. at 248.

[103] *Id.*

[104] *Celotex*, 477 U.S. at 322-23.

against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color . . ."[105] Section 1981 of Title 42 similarly prohibits employers from discriminating against an employee on the basis of race or color.[106] Similarly, Louisiana state law prohibits discrimination on the basis of race with respect to an employee's "compensation, or his terms, conditions, or privileges of employment."[107]

A claim of employment discrimination can be proven through direct or circumstantial evidence.[108] Direct evidence is evidence that proves the fact of discriminatory animus without inference or presumption.[109] Brown does not argue that this is a direct evidence case; instead, he argues that there is circumstantial evidence demonstrating Home Depot's discriminatory intent. To survive summary judgment in an employment discrimination case in the absence of direct evidence of discrimination, the plaintiff must demonstrate, pursuant to the burden shifting framework found in *McDonnell Douglas Corp. v. Green*, that:  (1) he was in a protected class; (2) he was qualified for the position; (3) he suffered adverse employment action; and (4)  he was replaced by someone outside of the protected class or treated less favorably than similarly situated employees.[110] "To establish a prima facie case, a plaintiff need only make a very minimal showing."[111]

If the plaintiff can establish these elements, the burden will shift to the defendant to show

---

[105] 42 U.S.C. § 2000e–2(a)(1).

[106] 42 U.S.C. § 1981.

[107] See LA. R.S. § 332(A)(1).

[108] *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

[109] *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).

[110] *McDonnell Douglas Corp. v. Green*,  411 U.S. 792 (1973); see also *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001) (application of the McDonnell Douglas frame work to Title VII claims).

[111] *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).

a legitimate, nondiscriminatory purpose for termination.[112] The defendant must point to admissible evidence in the record,[113] but the burden is one of production, not persuasion.[114]  The defendant is not required to show that the employment decision was proper, only that it was not discriminatory.[115] "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for adverse employment action.[116]  The employer may succeed at this stage by proving that it would have taken the same action even had it not considered the unlawful factor.[117]

If the defendant satisfies its burden of production, the burden shifts back to  the plaintiff to show that any non-discriminatory purposes offered by the defendant are merely a pretext for discrimination by presenting evidence of disparate treatment or demonstrating that the proffered explanation is false.[118]

### III.  Analysis

*A.*     *Title VII Claim*

   **1.**     **Prima Facie Case**

The parties do not dispute that Brown has established three of the four factors required under

---

[112] *Id.*

[113] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

[114] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

[115] *LeMaire v. La. Dep't of Transportation & Development*, 480 F.3d 383, 390 (5th Cir. 2007).  *See also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

[116] *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

[117] *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

[118] *Id.*

*McDonnell Douglas* to establish a prima facie case of race discrimination: (1) Brown, an African American, is a member of a protected class; (2) he was qualified for the position of ASM at Home Depot; and (3) he was terminated.  Instead, the parties dispute whether the fourth factor is met in this case; namely, whether Brown was replaced by someone outside of his protected class or treated less favorably than similarly situated employees.

It is undisputed that at the time of Brown's termination, he was one of four ASMs in the Marrero store.[119] As of January 1, 2013, three of those ASMs, including Brown, were African American, and one, Joseph Fouchi, was Caucasian.[120]  Today, there are three ASMs in Marrero; one is African American, and two are Caucasian.[121]

Brown  contends that he was replaced by Neil Penner, a Caucasian.  To support this argument, Brown proffers three sworn affidavits.  Under Federal Rule of Civil Procedure 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."[122] According to the commentary for the

 2010 Amendments to Rule 56(c), the burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. Accordingly, Brown bears the burden of demonstrating that the material contained in the affidavits is admissible.

---

[119] *Id.* at  ¶ 75.

[120]  *Id.* at  ¶ 76.

[121] *Id.* at  ¶ 77.

[122] Fed. R. Civ. P. 56(c)(4).

      a. **Franklin's Affidavit**

First, Brown submits the affidavit of Danise Franklin, a Home Depot customer, who states that in July 2013 she called the Marrero store and "asked for the manager who was now over roofing materials."[123] She was allegedly transferred to a person who identified himself as Neil, and who quoted her prices for the roofing materials about which she had called.[124] Franklin attests that prior to that phone call, she was always directed to Brown when she called the Marrero store to inquire about building and roofing materials.[125] Franklin also states that she visited the Marrero store "a couple of months" after the phone conversation and "was told by some of the Home Depot employees that Neil Penner had replaced Gerald Brown as the manager over building and roofing materials."[126]

Home Depot argues that these statements are inadmissible hearsay, and therefore that Franklin's affidavit is incompetent summary judgment evidence. Brown argues that the statements in Franklin's affidavit are admissible because they were made by employees at Home Depot's Marrero store concerning matters within the course and scope of their employment, and are accordingly not hearsay pursuant to Federal Rule of Evidence 801(d)(2)(D).[127]

However, Brown fails to demonstrate that Franklin's statement that she "was told by some of the Home Depot employees that Neil Penner had replaced Gerald Brown as the manager over

---

[123] Rec. Doc. 33-20 at pp. 1-2.

[124] *Id.*

[125] *Id.*

[126] *Id.*

[127] Rec. Doc. 40 at p. 4. Rule 801(d)(2)(D) provides that a statement is not hearsay if it is offered against a party and is a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.

building and roofing materials" is admissible pursuant to Rule 801(d)(2)(D), or any other rule. Franklin does not identify who allegedly made the statement, so the Court cannot determine whether the speaker was an agent of Home Depot, whether the alleged statements are within the scope of the speaker's agency or employment, or whether the statements were made during the existence of the employment relationship.[128] As stated above, the burden is on the proponent of the statement to show that the material is admissible as presented or to explain the admissible form that is anticipated. Brown has not demonstrated that the statements contained in Franklin's affidavit are admissible under Rule 801(d)(2)(D); accordingly, Brown has not satisfied his burden of demonstrating that these statements are admissible as presented. Brown has also failed to explain the admissible form of this evidence that is anticipated at trial. Accordingly, the Court finds that these portions of Franklin's affidavit are not proper summary judgment evidence.

Franklin also states that she called the Marrero store and was transferred to Penner when she "asked for the manager who was now over roofing materials." Regardless of whether this statement is admissible, it does not establish that Penner in fact replaced Brown as ASM.[129] Rather, it demonstrates only that, shortly after Brown's termination, Penner assumed some of Brown's job responsibilities. When a plaintiff has been terminated and his job duties are reassigned to existing employees who perform plaintiff's duties in addition to continuing to perform their previous duties,

---

[128] *See* Fed. R. Evid. 801(d)(2)(D).

[129] *See Mercer v. Capitol Mgmt. & Realty*, 242 F. App'x 162, 163 (5th Cir. 2007) (affirming district court grant of summary judgment on the basis that plaintiff failed to prove her prima facie case by offering no proof to rebut the employer's assertion that the person replacing her was not her permanent replacement, but only an interim holder of that position)

the employee has not been replaced for purposes of establishing his prima facie case.[130] Stated differently, "[w]hen a terminated employee's job duties are distributed among other employees after termination, those employees do not replace the terminated employee."[131] There is no evidence before this Court that Penner stopped performing his previous job duties. Therefore, even if Brown had demonstrated that Franklin's statements are admissible, which he has not, the statements would not establish that Penner replaced Brown.

### b.   Prewitt's Affidavit

Brown also points to the affidavit of Syntheria Prewitt, an African American and former Sales Associate in the Millwork Department.[132] Prewitt states as follows:

> Affiant stated that after Gerald Brown was terminated on or about July 4, 2013, Sales Associates at Home Depot's Marrero store were told that Neil Penner had been appointed as an Interim Assistant Store Manager to replace Gerald Brown, and if a Sales Associate needed any assistance in any of Gerald Brown's former departments, they should contact Neil Penner and he would assist them.

> Affiant stated that prior to her termination, Gerald Brown was her contact in the Building Materials, Lumber, Roofing and Pro Desk Departments, and shortly after Gerald Brown's termination, Neil Penner replaced Gerald Brown as the contact for Sales Associates in Gerald Brown's former departments.[133]

Home Depot contends that Prewitt's affidavit should not be considered because she is "obviously a disgruntled former employee." However, the Court does not weigh the evidence or evaluate the

---

[130] *See Hardy v. Shell Chem. Co.*, 693 F. Supp. 2d 611, 625 (E.D. La. 2010) (Lemelle, J.) (citing *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992) ("Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement")).

[131] *Martin v. Bayland, Inc.*, 403 F.Supp.2d 578, 583 (S.D.Tex. 2005), aff'd 181 Fed.Appx. 422 (5th Cir. 2006).

[132] Rec. Doc. 33-23.

[133] *Id.* at p. 2.  The Court notes that Brown's briefing mischaracterizes the statements made in Prewitt's affidavit. Brown alleges, incorrectly, that Prewitt stated that "Abadie told the sales associates that Penner was appointed as an Interim ASM to replace Brown." However, as the quotation above demonstrates, Prewitt did not identify who allegedly spoke to the sales associates.

credibility of witnesses at the summary judgment stage. Home Depot also argues that Prewitt's affidavit contains inadmissible hearsay.[134]  Brown responds, again, that the statements contained in Prewitt's affidavit are admissible  pursuant to Rule 801(d)(2)(D) because they "were made by employees at Home Depot's Marrero store concerning matters that were in the course and scope of their employment."[135] Brown also contends that Prewitt's statements "are based on [her] personal knowledge of statements made to [her], and pursuant to Rule 56(c), those statements are not hearsay."[136]

As with Franklin's affidavit, Brown has not satisfied his burden of demonstrating that the statements contained in Prewitt's affidavit are admissible. Prewitt states that "Sales Associates at Home Depot's Marrero store were told that Neil Penner had been appointed as an Interim Assistant Store Manager to replace Gerald Brown." However, she  does not identify the declarant of the statement, so the Court cannot determine whether the declarant was an agent of Home Depot, whether the alleged statements are within the scope of agency or employment, or whether the statements were made during the existence of the employment relationship.[137]

Even if the statement fell within the stated exception to the hearsay rule, and even accepting the statement as true, Prewitt's statement does not demonstrate that Penner was Brown's permanent replacement, as opposed to merely an interim replacement.[138] Similarly, Prewitt also states in her

---

[134] Rec. Doc. 37 at pp. 6–7.

[135] Rec. Doc. 40 at p. 4.

[136] *Id.*

[137] *See* Fed. R. Evid. 801(d)(2)(D).

[138] *Mercer v. Capitol Mgmt. & Realty*, 242 F. App'x 162, 163 (5th Cir.2007) (affirming district court grant of summary judgment on the basis that plaintiff failed to prove her prima facie case by offering no proof to rebut the employer's assertion that the person replacing her was not her permanent replacement, but only an interim holder of that

affidavit that, based on her personal knowledge, Penner replaced Brown as the contact for Sales Associates in Brown's former departments.[139] This statement establishes only that Penner assumed some of Brown's former job responsibilities shortly after Brown's termination. However, it does not establish that Penner replaced Brown as ASM.[140] As with Franklin's affidavit, Brown has failed to demonstrate that the statements contained therein are admissible, or to articulate the admissible form that is anticipated. Even if Brown had made this showing, which he has not, Prewitt's affidavit does not demonstrate that Brown was in fact replaced by Penner.

### c.     Brown's Affidavit

Finally, Brown submits his own affidavit stating that on or about July 26, 2013, he had a telephone conversation with Penner wherein "Penner told Affiant that he had been 'playing manager' since Affiant 'left' and that he 'started working' Affiant's 'schedule.'"[141] Brown also submits a document that he contends is a transcript of the recorded conversation.[142] Home Depot argues that the transcript is inadmissible hearsay and is in no way reliable.[143] In response, Brown argues that he authenticated the transcript in his affidavit, and also that the transcript is admissible because "[a]t his deposition, Penner did not deny making the statements contained in the transcript,

---

position)

[139] Rec. Doc. 40 at p. 2.

[140] *See Hardy v. Shell Chem. Co.*, 693 F. Supp. 2d 611, 625 (E.D. La. 2010) (Lemelle, J.) (citing *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992) ("Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement")).

[141] Rec. Doc. 33-3 at p. 9.

[142] Rec. Doc. 33-5 at p. 5.

[143] Rec. Doc. 37 at p. 5.

and he even attempted to explain his statements in the transcript."[144] Brown argues that Penner's statements are admissible for the additional reasons that they fall within Rule 801(d)(2)(D), and the statements are admissible lay opinion testimony under Federal Rule of Evidence 701.[145]

Even if the statements recounted in Brown's affidavit or the transcript were admissible, they do not demonstrate that Penner replaced Brown as an ASM. At most, the statements indicate that, shortly after Brown's termination, Penner assumed some of Brown's job responsibilities. Again, this is not sufficient to make even the "very minimal showing" necessary to establish Brown's *prima facie* case that he was replaced by Penner.[146] The Court notes, additionally, that Brown does not contest that today, there are only three ASMs in the Marrero store[147] or that Penner is a Department Head, not an ASM.[148] Accordingly, Brown's affidavit does not demonstrate that he was replaced by someone outside of his protected class.

Finally, Brown points to Penner's own deposition testimony, wherein he states that "Chad wants me to be manager but wants me to be the department head, also. He wants me to – He wants me to do two things at once."[149] This evidence, again, does not demonstrate that Penner actually replaced Brown as ASM. Brown has proffered no admissible evidence supporting this allegation and accordingly has not satisfied his burden of demonstrating that he was replaced by Penner.

---

[144] Rec. Doc. 40 at p. 2.

[145] *Id.* at pp. 2–3.

[146] *See Hardy v. Shell Chem. Co.*, 693 F. Supp. 2d 611, 625 (E.D. La. 2010) (Lemelle, J.) (citing *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992) ("Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement")).

[147] *Id.* at ¶ 77.

[148] *Id.* at ¶ 81.

[149] *Id.* at p. 8 (citing Rec. Doc. 33-17 at p. 33).

### d.        Disparate treatment

Alternatively, to establish a *prima facie* case of race discrimination, a plaintiff may show that the employer gave preferential treatment to another employee under "nearly identical" circumstances, which requires a showing that an employee outside of the protected class held the same job, title, and duties, was under the same supervisor, committed the same infractions, and was not discharged.[150] "Nearly identical" circumstances include the performance or misconduct issues that the employer asserts as the basis for the challenged adverse employment action.[151]

Brown appears to argue that Fouchi was a similarly-situated employee who was treated more favorably than Brown.  He argues that Fouchi was not disciplined or terminated for his involvement in a $10,000 markdown adjustment approval on shingles. However, Brown fails to present evidence that Fouchi has a similar disciplinary record or received similar performance reviews and ratings.[152] Similarly, Brown does not present evidence that he was involved in a similar incident that resulted in disciplinary action. Consequently, Brown cannot raise a genuine dispute of fact as to whether another similarly situated employee who committed the same infractions was treated more favorably.

The Court finds that Brown has not established that there is a genuine dispute of material fact with respect to his *prima facie* case. Brown has failed to demonstrate that he was replaced by anyone, let alone by someone outside of his protected class. As stated above, the burden is on the

---

[150] *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001) (holding that because other employees' violations differed from and did not rise to the level of those committed by plaintiff, plaintiff failed to establish disparate treatment); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995).

[151] *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2000).

[152] *See Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1186 (5th Cir. 1997) (holding that plaintiff's contention that he was "watched" more closely than white employees did not establish race-based discrimination in the absence of evidence that similarly situated white employees were also regularly tardy but not watched).

proponent to show that material in proffered affidavits is admissible as presented or to explain the admissible form that is anticipated. Brown has wholly failed to do so. Even if the statements in the affidavits that Brown proffers were admissible, they do not establish that Brown was, in fact, replaced by Penner. Brown has also failed to demonstrate that Home Depot gave preferential treatment to a similarly-situated employee under "nearly identical" circumstances. Accordingly, Home Depot's motion for summary judgment must be granted with respect to Brown's Title VII employment discrimination claim. Even if the Court found that Brown could establish a *prima facie* case of race discrimination, which it does not, Brown cannot establish that Home Depot's stated reason for his discharge is a pretext for discrimination.

### 2.   Non-Discriminatory Reason for Termination

Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for discharge.[153]  The defendant's burden is merely one of production, and the defendant need not persuade the court that it was actually motivated by the proffered reason.[154]  If a legitimate, nondiscriminatory reason is offered by the defendant, the presumption of discrimination created by the plaintiff's prima facie case "simply drops out of the picture", and "the ultimate question [is] discrimination vel non."[155]

Here, Home Depot contends that Brown was terminated based on his poor job performance, and submits documentation of disciplinary notices to support this claim.  "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason"

---

[153] *See, e.g., Grimes v. Texas Dept. Of Mental Health*, 102 F.3d 137, 143 (5th Cir. 1996).

[154] St. Mary's Honor Center v. Hicks, 509 U.S. 502, 508 (1993); *see also Mayberry v. Vought Aircraft*, 55 F.3d 1086, 1091 n. 4 (5th Cir. 1995).

[155] *Hicks*, 509 U.S. at 511, 518.

26

for adverse employment action.[156] Accordingly, the Court finds that Home Depot has sufficiently articulated a legitimate, non-discriminatory reason for Brown's termination. Thus, Brown has the burden to adduce evidence that Home Depot's proffered reason for his termination was merely a pretext for race discrimination.

### 3.      Proof of Pretext

After a Title VII case reaches the pretext stage, the question for summary judgment is whether a rational fact finder could find that the employer discriminated against the plaintiff on the basis of race.[157] The burden accordingly shifts back to Brown to "present sufficient evidence to find that the employer's asserted justification is false."[158] Neither a tenuous inference, nor the plaintiff's subjective belief, is sufficient to establish pretext.[159] To show pretext, the plaintiff must either show disparate treatment or show that the proffered explanation is false or unworthy of credence.[160] The plaintiff "must do more than just dispute the underlying facts and argue that [the employer] made the wrong decision."[161] Merely disagreeing with an employer's negative performance assessment is insufficient, and a plaintiff cannot survive summary judgment without an actual showing that the adverse employment action was the result of discrimination.

Brown argues that Abadie failed to consider Prewitt, an African American, for a promotion approximately ten months after Brown's termination. However, this "me too" evidence is not

---

[156] *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

[157] *Pratt v. City of Houston, Texas*, 247 F.3d 601, 606 (5th Cir. 2001).

[158] *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 903 (5th Cir. 2000).

[159] *Id.; see also Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 (5th Cir. 1995).

[160] *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010).

[161] *LaMaire*, 480 F.3d at 391.

probative of any discriminatory intent towards Brown.  Moreover, Prewitt's subjective belief  and unproven allegations that she was not  considered for a promotion because of her race is not evidence that she was discriminated against, let alone evidence that Brown was discriminated against.[162] Moreover, Brown has proffered no evidence that Prewitt even applied for the promotion at all.[163] Accordingly, Prewitt's affidavit is merely anecdotal "me too" evidence that is not probative of whether Brown was terminated due to race discrimination.

Brown also proffers the affidavit of Keith  Haynes, a Home Depot customer, wherein Haynes states that "since approximately January 1, 2012, [he] has observed Chad Abadie treat African American customers differently than Chad Abadie treats Caucasian customers."[164] Haynes states that he has witnessed Abadie treat African American customers in an "abrasive" manner, and that he believes this is "because of a racial bias on the part of Chad Abadie."[165] However, this anecdotal evidence and Haynes' subjective belief that Abadie had a racial bias is not probative of whether Home Depot's stated reason for terminating Brown is merely pretext for discrimination.[166] Even taken as true, Haynes' perception that Abadie treated African American customers in an

---

[162] *See, e.g., Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 303 (5th Cir. 2000) (finding that the district court abused its discretion by not excluding a "parade of anecdotal witnesses, each recounting his own, entirely unrelated contention of age discrimination at the hands of the defendant.").

[163] *See Id.* ("Anecdotes about other employees cannot establish that discrimination was a company's standard operating procedure unless those employees were similarly situated to plaintiff."); *Murphy v. John Peter Smith Hospital*, 2008 WL 4966659 (N.D. Tex. Nov. 19, 2008), citing *Sprint/United Management Co. v. Mendelsohn*, 128 S.Ct. 1140, 1147 (2008) (*Mendelsohn* requires an analysis of me-too evidence that "is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and the theory of the case.")

[164] Rec. Doc. 33-18 at p. 2.

[165] *Id.*

[166] *See Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 303 (5th Cir. 2000) (finding that the district court abused its discretion by not excluding a "parade of anecdotal witnesses, each recounting his own, entirely unrelated contention of age discrimination at the hands of the defendant.").

"abrasive manner" does not establish that the stated reason for Brown's termination was merely a pretext for race discrimination. The Court notes, moreover, that Brown does not dispute that the termination process was initiated by Hogan-Jones, not Abadie, and that Demetrice Brown approved the decision.[167]

Finally, Brown contends that the stated reason for his termination – his poor work performance – was a pretext for race discrimination because Brown received a performance-based award on August 22, 2012 and a performance bonus and salary increase on April 29, 2013.[168] Brown argues that the inconsistency between the award and performance bonus and Home Depot's proffered reason for the termination create a genuine issue of material fact as to pretext.[169] However, Home Depot has proffered evidence that the performance bonus is based off of store-wide performance, not off of individual performance.[170] Brown does not refute this evidence; instead, he merely disagrees with Home Depot's characterization of his disciplinary history or performance, which is insufficient to survive summary judgment without an actual showing that the adverse employment action was the result of discrimination.[171]  The Fifth Circuit has instructed that even an incorrect belief that an employee's performance is inadequate qualifies as a legitimate reason to terminate an at-will employee, and, accordingly, a plaintiff must offer evidence to support an inference that the employer had a retaliatory motive, not just an incorrect belief.[172] Here, Brown has

---

[167] Rec. Doc. 30-2 at ¶ 67.

[168] Rec. Doc. 33 at p. 4.

[169] *Id.* at p. 14.

[170] Rec. Doc. 30-7 at ¶ 13.

[171] *Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001).

[172] *Haverda v. Hays Cnty.*, 723 F.3d 586, 596 (5th Cir. 2013).

not adduced any evidence supporting his assertion that he was terminated due to race discrimination.

Brown cannot establish a *prima facie* case of race discrimination with respect to his termination because he has not presented competent summary judgment evidence that his position was filled with a person who is not a member of his protected class.[173] Even if he could establish a *prima facie* case, Brown has not established that the stated reason for his termination was merely a pretext for race discrimination. Accordingly, Home Depot's motion for summary judgment with respect to Brown's Title VII claim for race discrimination is granted.

**B.     Section 1981 Claim**

Claims of intentional discrimination brought under Title VII and Section 1981 require the same proof to establish liability. Specifically, the plaintiff must establish that: (1) he was in a protected class; (2)  he was qualified for the position; (3) he suffered adverse employment action; and (4) he was replaced by someone outside of the protected class or treated less favorably than similarly situated employees.[174] For the reasons stated above, Brown has failed to established that he was replaced by someone outside of his protected class, or that he was treated less favorably than similarly situated employees.   Accordingly, Home Depot is entitled to summary judgment on Brown's Section 1981 claim.

**C.     State Law Claim**

Brown also alleges a state law cause of action under the Louisiana Employment

---

[173] *Black v. Pan American Laboratories, L.L.C.*, 646 F.3d 254 (5th Cir. 2011).

[174] *See Criner v. Tex.—N.M. Power Co.*, 470 F. App'x 364, 370 n. 3 (5th Cir. 2012) (per curiam) (citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 422 n. 1 (5th Cir. 2000)); see also *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001) (application of the McDonnell Douglas frame work to Title VII claims).

Discrimination Law, LA. R.S. § 23:301 *et seq*,[175] over which this Court has pendant jurisdiction even after dismissing the only federal claim.[176] While the pending motion requests dismissal of Brown's entire complaint, the substance of the motion only addresses his federal cause of action. Section 1367(c)(3) specifically grants district courts the discretion to retain or decline supplemental jurisdiction once it has dismissed all claims over which it has original jurisdiction, such as Brown's claim under Title VII.[177]

The United States Supreme Court in *United Mine Workers of America v. Gibbs*[178] instructed that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."[179] However, the Fifth Circuit has held that "[w]e look to federal employment discrimination jurisprudence when interpreting Louisiana's anti-discrimination laws."[180] Moreover, in the specific context of a claim under the Louisiana Employment Discrimination Law, the Fifth Circuit has required a plaintiff to establish the same *prima facie* case of race discrimination as required under federal Title VII claims. As the standard applicable to Brown's federal and state law claims is identical, and Brown's claims fail

---

[175] Rec. Doc. 1 at ¶ 12.

[176] 28 U.S.C. 1367(c)(3).

[177] *See Cudd Pressure Control Inc. v. Roles*, 328 F. App'x 961, 966 n. 2 (5th Cir. 2009)

[178] 383 U.S. 715 (1966).

[179] *Id.* at 726.

[180] *Baker v. FedEx Ground Package Sys. Inc.*, 278 F. App'x 322, 327 (5th Cir. 2008) (citing *Smith v. Amedisys, Inc.*, 298 F.3d 434, 448 (5th Cir. 2002)).

under that standard, it would be futile for this Court to decline pendant jurisdiction over the remaining state law claim. Therefore, the Court will dismiss Brown's claim under the Louisiana Employment Discrimination Law as well.

### V. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Home Depot's Motion for Summary Judgment[181] is **GRANTED.**

New Orleans, Louisiana, this <u>30th</u> day of April, 2015.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[181] Rec. Doc. 30.